———— FILED    ———— ENTERED
———— LODGED    ———— RECEIVED

JUL 30 2018    CA

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                              DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

# 18-CV-01114 RSL

Kevin Volkmann,

Does 1-160,

                            Plaintiffs,

          v.

Solid Ground Washington,

Gordon McHenry, Jr.,

William Rumpf,

and Warren Brown                    ,

                            Defendants.

CASE NO. _____

COMPLAINT FOR A CIVIL CASE

Jury Trial:  ☒ Yes  ☐ No

## I.    THE PARTIES TO THIS COMPLAINT

A.    Plaintiffs

| | |
|---|---|
| Name | Kevin Volkmann plaintiff *pro se* |
| Street Address | 6940 62nd Avenue NE, Apartment 213 |
| City and County | Seattle, King County |
| State and Zip Code | Washington 98115 |
| Telephone Number | (206) 476-8645 |
| | |
| Does 1-160 | Tenants and former tenants of Solid Ground Housing. |

COMPLAINT FOR A CIVIL CASE - 1

B.   Defendants

   Defendant No. 1

| | |
|---|---|
| Name | Solid Ground Washington |
| Job or Title *(if known)* | Washington Nonprofit Corporation |
| Street Address | 1501 North 45th Street |
| City and County | Seattle, King County |
| State and Zip Code | Washington 98103 |
| Telephone Number | (206) 694-6700 |

   Defendant No. 2

| | |
|---|---|
| Name | Gordon McHenry, Jr. in official capacity as |
| Job or Title *(if known)* | President & CEO, Solid Ground Washington |
| Street Address | 1501 North 45th Street |
| City and County | Seattle, King County |
| State and Zip Code | Washington 98103 |
| Telephone Number | (206) 694-6700 |

   Defendant No. 3

| | |
|---|---|
| Name | William Rumpf in official capacity as |
| Job or Title *(if known)* | President, Mercy Housing Northwest |
| Street Address | 2505 3rd Avenue, Suite 204 |
| City and County | Seattle, King County |
| State and Zip Code | Washington 98121 |
| Telephone Number | (206) 838-5700 |

Defendant No. 4

| | |
|---|---|
| Name | Warren Brown in official capacity as |
| Job or Title *(if known)* | President, North Seattle College |
| Street Address | 9600 College Way North |
| City and County | Seattle, King County |
| State and Zip Code | Washington 98103 |
| Telephone Number | (206) 934-3601 |

## II.     BASIS FOR JURISDICTION

A.     Basis for Jurisdiction

Federal statutes, regulations and provisions of the United States Constitution at issue for one or more plaintiffs in this case include:

The First Amendment of the United States Constitution – Freedom of Speech;

18 U. S. Code § 351 (e) – Assault;

18 U. S. Code § 1513 (e) – Retaliating against a witness, victim or informant;

18 U. S. Code § 1591 – Sex trafficking of children by force, fraud, or coercion;

18 U. S. Code § 1701 – Obstruction of mails generally;

18 U. S. Code § 1702 – Obstruction of correspondence;

18 U. S. Code § 1951 – Interference with commerce by threats or violence;

18 U. S. Code § 2511 – Interception and disclosure of wire, oral, or electronic communications prohibited;

42 U. S. Code § 4822 – Requirements for housing receiving Federal assistance;

24 C. F. R. § 982.401 (e) – Housing Quality Standards – Thermal Environment;

24 C. F. R. § 982.401 (l) – Housing Quality Standards – Site and Neighborhood;

36 C. F. R. § 2.31 – Trespassing, tampering and vandalism.

1           1.     The Amount in Controversy.

2      Summary amounts in controversy include the estimated damages below (which are subject

3      to modification after full discovery):

4           Harmful thermal environment tort (est. 160 plaintiffs): $1,195,600.00;

5           Harmful construction-related lead dust and noise (est. 72 plaintiffs): $1,800,000.00;

6           Lost income due to racketeering, criminal harassment, assault, battery, intentional

7      infliction of emotional distress, trespass and defamation torts (at least 1 plaintiff): $840,000.00;

8           Wrongful eviction(s) including an eviction violating the First Amendment to the U. S.

9      Constitution with exemplary damages (at least 1 plaintiff): $500,000.00;

10          Exemplary damages for racketeering, and intentional torts of assault, battery, intentional

11     infliction of emotional distress, trespass and defamation (est. 12 plaintiffs): $3,000,000.00;

12          Damages authorized under 18 U. S. Code § 2520 – Recovery of civil damages authorized

13     (at least 1 plaintiff): $3,434,000.00.

14          TOTAL ESTIMATED CLAIM: $10,769,600.00.

## III.    STATEMENT OF CLAIM

1.     **Introduction**. The lead plaintiff in this case is Kevin Volkmann, a long-time tenant at Santos Place Apartments, and a student at North Seattle College, where he was named to the Honor Society and the President's List with a 4.0 grade point average. Mr. Volkmann is a graduate of the top-ranked Stanford University Industrial Engineering program and holds a Master's degree from the top-ranked University of Pennsylvania Wharton School of Finance.

Mr. Volkmann was injured in an unrelated October 3, 2015 hit-and-run assault by an automobile and is now temporarily disabled.          Mr. Volkmann is now the Executive Director of the Associated Resource Team of Washington, a nonprofit for emergency management, and serves as the re-elected Democratic Precinct Committee Officer for Magnuson Park, Seattle.

**Exhibit A,** attached, is a copy of March 27, 2014 letter written by case manager Taoufik Atallah of the Downtown Emergency Service Center recommending Mr. Volkmann for admission to the Solid Ground housing program.   **Exhibit B**, attached, is a copy of a Certificate of Appreciation awarded to Mr. Volkmann by the Seattle Police Department on August 20, 2016.   **Exhibit C**, attached, is Mr. Volkmann's Honor Society Acceptance Letter.

2.      **Summary**.  In this complaint civil torts based upon Federal criminal statutes are proposed for the private prosecution of crimes, because landlord, property manager, security company, college administration, and police might have obstructed prosecution in these matters.  Important questions of civil rights under the First Amendment of the United States Constitution, and important questions of civil property rights are also proposed herein for trial.

3.    **2012 – 2014 Gang Assaults**.  As an instance of probable gang activity, Plaintiff Volkmann was assaulted and battered hundreds of times by aggressive, ostensibly homosexual men at the Seattle Downtown YMCA, who habitually grabbed and bumped him in the locker room facilities daily.  In one instance, an extremely large, obese male severely battered plaintiff Volkmann after he asked to use the swimming suit dryer.  The assailant had been washing and drying his laundry in the men's locker room, blocking access to the swimming suit dryer for half an hour prior to Mr. Volkmann's request.

Volkmann's complaints to YMCA management about sexual assaults and batteries were not answered.  The extremely violent battery against Volkmann resulted in the ejection of the offender from the YMCA.

4.    **Stalkers, solicitors, smokers and loiterers at Santos Place Apartments.** Shortly after moving into Santos Place Apartments, owned by Solid Ground, plaintiff Volkmann discovered that neighbors were extremely idle and often spent their days loitering and smoking.  Plaintiff Volkmann was enrolled in college in Spring Quarter 2014 and he was busy with activities including attending an International Communication Association Annual Conference in May 2014.

At least two of Mr. Volkmann's neighbors, including Anthony and Deborah, habitually ran into the hallway when they heard Mr. Volkmann leaving his apartment, accosting Mr. Volkmann daily, and these and other tenants stalked Volkmann relentlessly. Deborah was in close contact with prostitutes due to her operation of an organization to support prostitutes in leaving that illegal trade. Santos Place tenants frequently spent their days loitering in the hallways, in the lobby and on the sidewalks around Santos Place Apartments.

Program manager Solid Ground failed to require that transitional housing tenants work or attend school, and the resulting failure to work or attend school kept these tenants dependent upon Solid Ground and other subsidized housing providers. Mr. Volkmann found loitering, stalking, soliciting and smoking tenants to be extremely distressing, but Solid Ground was unresponsive to his complaints, which are documented in hundreds of e-mail letters.

5.      **Assault by tenant at Santos Place**. Some Santos Place tenant(s) habitually moved plaintiff Volkmann's laundry out of dryers before it was dry to make room for their own laundry.  Volkmann complained to Solid Ground program staff about this problem, which presumably affected other tenants, too.  About June 11, 2014, Santos Place tenant Maritza confronted plaintiff Volkmann, accusing him of moving her laundry, and then violently chasing him around the building.  Mr. Volkmann was forced to hold an internal fire door shut to prevent Maritza from battering him.   Maritza was a typically idle Santos Place tenant whose associates may have included older men from surrounding wealthy neighborhoods and she seemed to be a favorite of Solid Ground management.

Volkmann complained to Solid Ground staff about Maritza's criminal behavior, but she remained on the property without eviction.  Solid Ground responded to the incident by rewarding Maritza with a larger, double-sized apartment, and punishing Volkmann with a security camera aimed at his apartment hallway door.  Volkmann, however, received no notice of any lease violation.

6. **Discovery of the pimping of juveniles**. Santos Place Apartments serve adults only. However, adjacent Solid Ground apartment properties serve families with children. Over the course of several months in 2014-2015 Mr. Volkmann discovered that Solid Ground Housing tenants were dragging their very young children (ages 2 to 5) out on Metro buses late on Friday and Saturday nights, corresponding to juvenile pimping practices. These families are known to be indigent or low-income, and to be mostly idle, unemployed and accordingly able to ride the buses at any time of the day or any day of the week – not only at times when working men have been recently issued paychecks.

The above-mentioned offending tenants evidently reside at Solid Ground's Brettler Place, at Solid Ground's Building 26 North and Building 26 South, and at Burke Gilman Place, operated by another low-income housing provider.

Later observations confirmed that these families were actively pimping their children at locations including Starbucks stores at University Village Shopping Center, at musical concerts at University Village, and at the bathrooms of University Village Shopping Center. Volkmann's complaints about prostitution to Solid Ground management and staff fell on deaf ears.

7.      **Truckers at Solid Ground Housing**.  Over the course of three years large 18-wheel semi-truck and trailer rigs were observed to be parking overnight on 62nd Avenue Northeast, next to Solid Ground Housing.   These trucks would typically arrive late in the day and leave the following morning.   When Mr. Volkmann photographed these trucks at night, no drivers were observed on the scene.  These trucks are believed to be driven by patrons of prostitutes at Solid Ground Housing.

Following Mr. Volkmann's reporting of these trucks, the truckers started instead parking overnight in Magnuson Park parking lot W6, a short walk away from Solid Ground Housing.

8.      **Loitering old men in Magnuson Park**.  Over the course of four years middle-aged and older men were observed to be loitering for long periods day and night in all of Magnuson Park's many parking lots.   These men would sit in their vehicles or stand next to their vehicles and aggressively scan the park for passersby. On several occasions old men followed, approached or accosted plaintiff Volkmann, attempting to strike up conversation.

Suspected pedophiles lurked especially at the Mountaineers, at the Brig, near the Waldorf School, in Lake Washington beach parking lots, near the Magnuson Boat Launch, at beachside bathrooms, and near the Cross Park Trail bathroom.  It is believed that predatory loiterers lured both adults and juveniles into their vehicles and perhaps also to other locations in the park, including Magnuson Building 30.

9.      **Extreme overheating in Solid Ground apartments**.  Mr. Volkmann's apartment at Santos Place faced south and it suffered extreme overheating for most of the year, even in January.  Weak central air conditioning serving Santos Place hallways was inadequate and it did not serve any apartments.  The nearest hallway air-conditioning vent was 36 feet away from Volkmann's apartment door, and the air conditioning was seldom operating, even on very hot days.  Extreme heat made it difficult or impossible for Volkmann to study, work or sleep in his apartment year-round.   Room surface temperatures often exceeded 100° F and an OSHA recommendation for maximum temperature in working environments is 76° F.

See **Exhibit D** showing a thermometer reading on July 25, 2017.  Santos Place walls and roof absorb heat during the day and radiate heat into apartments throughout the night, making sleep difficult or impossible.

**On April 6, 2017 Mr. Volkmann proposed researching a premises liability tort case against Solid Ground to North Seattle College instructor Larry Hopt, JD**.  The e-mail cover letter to Mr. Hopt, the e-mail return receipt, and the BUS 298 course proposal are shown in **Exhibit E, Exhibit F** and **Exhibit G** respectively.  Mr. Volkmann had been a student of Mr. Hopt in the previous two quarters at North Seattle College in BUS 201 Business Law and BUS 298 Special Topics: Business, receiving a grade of 4.0 ("A") in both courses.

A draft litigation proposal was prepared for Summer 2017 BUS 298 and is shown in **Exhibit H**.  The premises liability research paper was only one of several business-related proposals prepared for the course.

10.     **Dereliction by instructor Larry Hopt, JD**.  In Summer 2017 Dr. Hopt agreed to be Mr. Volkmann's instructor for the Special Topics: Business course (BUS 298), which is taught one-on-one with only one student in the course. However, Mr. Hopt failed to meet for this course, despite Mr. Volkmann's attempts to arrange course meetings, and Mr. Volkmann's many visits to try to find Dr. Hopt at his office, where he was unfortunately not present.

Mr. Volkmann diligently completed planned coursework despite the lack of an instructor.  Coursework was sent to Larry Hopt's e-mail for grading and comments.

Dr. Hopt was again negligent in failing to provide a grade for the course in a timely fashion.  As a result of Dr. Hopt's dereliction, Mr. Volkmann was placed on temporary academic probation, despite having a perfect 4.0 grade point average.  In an appeal to college administrators, Mr. Volkmann compiled over 100 pages of *bona fide* BUS 298 coursework completed, and as a result of his petition, Mr. Volkmann was removed from academic probation and returned to good academic standing, after days of anguish over Mr. Hopt's failures to perform.  Mr. Volkmann was belatedly awarded a 4.0 grade ("A") for the Summer 2017 course.

Dr. Larry Hopt's Summer 2017 performance was in stark contrast to the two previous quarters when he also served as Mr. Volkmann's instructor.  The turning point seems to have been Mr. Volkmann's April 6, 2017 proposal to prepare a premises liability tort case against Solid Ground Washington.

11.     **A flurry of frivolous notices from Mercy Housing Northwest.**  In the three years between April 1, 2014 and April 1, 2017 Mr. Volkmann received zero notices of lease violations at Santos Place Apartments.

Following Mr. Volkmann's April 6, 2017 e-mail proposal to Larry Hopt for a premises liability tort case against Solid Ground and Mercy Housing Northwest, Mr. Volkmann received a flurry of frivolous 10-day notices from property manager Mercy Housing Northwest starting 13 days after April 6, 2017 on April 19, 2017. Additional frivolous or retaliatory notices were sent April 20, 2017, April 25, 2017, July 20, 2017 and July 21, 2017.

12.     **Assaults by Brettler Place juvenile gangs.**   Following Mr. Volkmann's April 6, 2014 academic e-mail proposal to research a premises liability tort case against Solid Ground, gangs of Brettler Place juveniles started assaulting Mr. Volkmann, chasing him on his evening walks to the North Shore Recreation Area of Magnuson Park.  See **Exhibit I**, July 21, 2017 e-mail complaint to Solid Ground, and **Exhibit J**, September 26, 2017 e-mail complaint to Marc Hoffman, Seattle Parks and Recreation.

Prior to April 2017 Mr. Volkmann had routinely walked to the North Shore Recreation Area without any incident.  Following April 6, 2017, Mr. Volkmann could not pass the Magnuson Park Community Center while walking on 62nd Avenue NE without being in fear for his life due to stalking and assaulting gangs of Brettler Place Apartments juveniles.  In addition, several suspicious loitering

non-park residents started appearing on the path to the North Shore Recreation Area, raising further concerns about gang harassment.

13.    **Dereliction by healthcare provider**. In 2017 Mr. Volkmann's healthcare provider failed after multiple requests to provide effective referrals for x-rays of injuries.

After multiple requests, Mr. Volkmann's healthcare provider failed to correct serious identification errors in his online patient file.    Several errors were introduced in Mr. Volkmann's file after April 2017.

As a result, Mr. Volkmann attempted to find another healthcare provider.

14.    **Evidence of criminal trespass and vandalism by Mercy Housing**.    In September 2017 Mr. Volkmann reported illegal entry and vandalism in his Santos Place apartment.    Mercy Housing Northwest is the only other party known to have keys to Mr. Volkmann's apartment.    See **Exhibit K**, a September 28, 2017 e-mail complaint to Humberto Alvarez of Solid Ground.

15.    **Obstruction, lewd dance, sexual harassment and solicitation by Brettler Place juvenile**.    A female Brettler Place juvenile tenant blocked a doorway at the Magnuson Community Center, performing a lewd dance and sexually-harassing solicitation.

16.     **Criminal trespass, assault and battery by a gang of Brettler Place juveniles**.  July 20, 2017 a gang of Brettler Place juveniles trespassed the entire length of the Santos Place parking lot and assaulted and battered Mr. Volkmann after he requested that they leave the property.   See **Exhibit L** showing a photograph of two of the dozen or so gang members trespassing in the Santos Place parking lot.   These two trespassers were joined by a large group from Brettler Place who chased Mr. Volkmann on his own property and placed him in fear for his life.

Depicted large juveniles ran out of their Brettler Place apartments in less than one minute after Mr. Volkmann stepped into the Santos Place parking lot, where Mr. Volkmann is a tenant.  Based upon hundreds of similar incidents it is believed that Solid Ground directs Brettler Place ostensible juvenile prostitutes to trespass onto Santos Place property whenever they see Mr. Volkmann leave his residential building, as is the case when he deposits garbage in the outside dumpster.

Mercy Housing Northwest refuses to recognize the property rights of Santos Place tenants, and instructs juveniles to trespass through the Santos Place parking lot instead of taking the sidewalk to the west of Santos Place, which is a path of shorter length to the common destination of the Magnuson Community Center.

There are no easement rights for Brettler Place tenants on Santos Place property except for a 14-foot-wide strip covering the road between the two apartment buildings as specified in **Exhibit M**, Six Page April 24, 1998 Reciprocal Easement Agreement.

17.     **Solid Ground directs groups of Brettler Place juveniles to criminally trespass through the Santos Place parking lot**.  On numerous occasions Solid Ground staff members have been observed directing large groups of non-resident juveniles from Brettler Place Apartments to walk through the entire length of the Santos Place parking lot to the Magnuson Community Center.

Solid Ground compels this criminal activity by juveniles despite the fact that the public-right-of-way sidewalk to the west of Santos Place is a shorter, cleaner, safer and completely legal path.  See a property map on page 5 of **Exhibit H**.

Further discovery may show that Solid Ground staff and management directed or approved trespassing and condoned concomitant crimes of stalking, illegal smoking, illegal parking, theft, vandalism, drug and sex trafficking, and engaged in the intentional infliction of emotional distress against Mr. Volkmann.

18.     **Ostensible criminal hacking of Mr. Volkmann's e-mail account**.  Because more intense harassment by Solid Ground and other parties commenced about April 2017, there is good reason to believe that Solid Ground and/or one of its partners has engaged in illegal surveillance of Mr. Volkmann's mail.com account.  Mr. Volkmann's April 6, 2017 academic proposal to research a premises liability tort case against Solid Ground was apparently intercepted by Solid Ground or one of its partners or forwarded improperly to Solid Ground, resulting in hundreds of incidents of retaliatory criminal harassment against Mr. Volkmann.

Additional discovery, investigation and research are expected to provide more evidence regarding the likely surveillance of Volkmann's e-mail.

19. **Volkmann's complaints to local SHA and federal HUD**. Mr. Volkmann served a two-page complaint dated July 24, 2017 to the Seattle Housing Authority entitled "JUVENILE PROSTITUTION AT SOLID GROUND HOUSING IN SEATTLE'S MAGNUSON PARK."

Jeffrey W. McMorris, Northwest Regional Administrator for HUD, responded to Mr. Volkmann's complaint that "Solid Ground established new low-income housing in a major Seattle park, ostensibly for the purpose of housing completely idle prostitutes to the serve the long-established North Seattle pedophile community" in Mr. McMorris' signed letter dated May 22, 2018.

20. **Volkmann's complaints and tips to the FBI**. Mr. Volkmann has issued at least 22 confidential documents to the FBI regarding local gang crime, especially regarding ostensible juvenile sex racketeering in Magnuson Park.

Complaints have been made to federal authorities, including the FBI, because it is believed that the Seattle Police Department is integrally involved with condoning or sponsoring prostitution in Seattle, especially in North Seattle, including juvenile prostitution in Magnuson Park.

21.    **Volkmann's complaints to the U. S. Department of Education**.  In a July 30, 2017 letter to DOE captioned "HUD-Program Juveniles Seriously Endanger School Children" Volkmann alerted DOE to the profiled predatory sexual behavior of Brettler Place juveniles, which he deemed was due largely to their ostensible involvement of sponsored juvenile prostitution in Magnuson Park.

In a December 2, 2017 complaint to DOE, Mr. Volkmann outlined aspects of "Harassment at North Seattle College" aimed at him, including sexual harassment by ostensible prostitutes.

Complaints were made to federal authorities due to the obstructive behavior of college administrators, who sought first and foremost to choke speech not to their liking.   Seattle Police were also seen as incapable of taking action regarding administrative matters at North Seattle College, and unwilling to enforce laws against prostitution and to take action against the concomitant sexual harassment by prostitutes, who in many cases seem to be the darlings of the police.

22.    **Changes to Magnuson Park rules**.  Alleged pedophile Ed Murray resigned as Mayor of Seattle effective September 12, 2017.  According to Magnuson Park Manager, Brian Judd, the following day Magnuson Park rules were changed to close parking lots at night and to provide night-time security.

Magnuson Park rule changes are a step in the right direction, but are insufficient to stop night-time juvenile prostitution in the park.

1     23.     **Volkmann's complaint to the Washington State Auditor**.   The Office

2     of Washington State Auditor Pat McCarthy responded to a Hotline complaint about

3     Seattle's Solid Ground at Sand Point Housing in a letter dated August 2, 2017.

4
      24.     **Volkmann's Santos Place rent is approved through March 31, 2019**.
5
      The Seattle Housing Authority (SHA) has approved Mr. Volkmann's 100% rent
6
      subsidy through March 31, 2019.  Mr. Volkmann's rent has been paid on time for
7
      each of the 52 months of his tenancy.
8

9     25.     **Mercy Housing forced Volkmann to drop a key academic course**.

10    Mercy Housing Northwest misinterpreted a HUD regulation and served Mr.

11    Volkmann a November 14, 2017 eviction notice, forcing him to drop an academic

12    course.  North Seattle College delayed providing necessary information for weeks,

13    impeding Mr. Volkmann's efforts to resolve the matter.

14
      26.     **Defective grading by college instructor David Eberhardt**.  North Seattle
15
      College's David Eberhardt issued Volkmann an initial grade of 2.0 ("C") in a Fall
16
      2017 BUS 298 Special Topics: Business course, forcing Mr. Volkmann to petition
17
      for a grade change.  Mr. Volkmann was forced to spend valuable time appealing
18
      the grade, which was eventually changed to 4.0 ("A"), partly reflecting the fact that
19
      Mr. Volkmann is a graduate of the top-ranked business school in the world.
20

21    Ostensible harassment of Mr. Volkmann by North Seattle College instructors may

22    have been present before April 6, 2017, but it was certainly more pronounced

23    thereafter.

24

1     27.    **Failure of North Seattle College instructors to provide requested**

2     **recommendation letters**.   Prior to 2018 none of Mr. Volkmann's high school,

3     college, graduate school instructors, employers or volunteer supervisors had ever

4     refused to provide him a letter of recommendation upon request.  In 2018 three

5     North Seattle College instructors refused to provide recommendation letters for the

6     Martin Family Foundation Honors Scholarship at the University of Washington.

7

8     One volunteer supervisor also failed to provide a letter of recommendation.

9

10     This turn of events represents a possible indicator of the current gang harassment

11     environment that Mr. Volkmann faces.  It might be surmised that housing service

12     providers like Solid Ground Washington seek jointly with other service providers

13     to keep their tenant clients indigent and dependent upon welfare services.

14

15     28.    **Genealogical research yields clues to gang harassment**.  Beginning in

16     January 2017 Mr. Volkmann discovered several very prominent relatives, whose

17     existence may explain life-long hounding by criminal gangs possibly sponsored by

18     rival political families.  Mr. Volkmann discovered that prominent banker and

19     businessman John Elorriaga, former President, CEO and Chairman of US Bancorp

20     was a very close relative, and that that Mr. Volkmann is related to Republican

21     Charles Evans Hughes, the late Chief Justice of the U. S. Supreme Court and

22     Governor of New York State.  Evidently Mr. Volkmann is also related to billionaire

23     heiress Gabriele Volkmann, and a large number of other prominent Volkmanns.

24

29. **Controversial research**.  In a 2018 e-mail to the North Seattle College library staff Volkmann requested that the John F. Kennedy portrait be removed for good cause.  As a group, the librarian researchers agreed to remove the portrait.

30. **Mercy Housing added a lease rider likely aimed at choking speech and evicting Mr. Volkmann**.  October 25, 2017 Mr. Volkmann was forced to sign an unconstitutional, discriminatory rider to his lease agreement, tacked on by Mercy Housing for the ostensible purpose of evicting him.  A copy of this overly broad, undefined rider is attached in **Exhibit N**.

"Discrimination" is undefined in this lease document.  Mr. Volkmann notes that he has no authority over housing or employment decisions that might affect others in a discriminatory manner.     Mercy Housing apparently wrongly defines discrimination as any negative comment about anyone, regardless of how true, provoked or deserved that comment may be.  Evidently Mercy Housing intended to use tenants to provoke Mr. Volkmann with relentless harassment, and seek his eviction in retaliation for his complaints to authorities.

Mr. Volkmann has been deprived of the right to complain about the ongoing ostensible criminal activities of his landlord, and this deprivation has led to his wrongful eviction, from which he faces many extreme harms.

Further discovery may find improper landlord contacts with former Seattle Mayors Ed Murray and Charles Royer, and with other organizations  may have contributed to the wrongful eviction of Mr. Volkmann.

31.   **No easement rights apply to Santos Place parking lot**.  As noted in the **Exhibit M** 1998 Easement Agreement, the only easement that applies to Santos Place property with respect to Brettler Place is the narrow portion of road between the two properties.

32.   **Santos Place parking lot is a crime hotspot**.   Brettler Place has 110 marked parking spots on its property, which are covered by security cameras and security lighting.   Santos Place, in stark contrast, has only 20 marked parking places, and these spots are prone to day- and night-time criminal activity due to a lack of security cameras and security lighting.   Solid Ground has recently spent hundreds of thousands of dollars remodeling Santos Place Apartments, but they spent no money on security in the parking-lot crime hotspot, maintaining it as a safe harbor for criminal activity, including the night-time prostitution trade.

Mr. Volkmann has repeatedly demanded that all forms of crime on the property, and that all crimes against him cease, and that Solid Ground and Mercy Housing immediately take remedial action.   Solid Ground and Mercy Housing have disregarded these many demands related to peaceful enjoyment of the property.

33.   **Lewd sexual solicitations from juvenile and adult prostitutes**.  Over the course of several years Mr. Volkmann has been accosted several times by the lewd solicitations of juvenile and adult prostitutes operating at Solid Ground Housing.

34.   **Evidence of illegal parking and criminal trespass**.   Hundreds of documentary photographs show Brettler Place tenants and many other non-tenants parking illegally and/or trespassing on the Santos Place parking lot.   Thousands of counts of trespass apply in this case.   Trespass appears to be the gateway crime to most other criminal activity taking place in the Santos Place parking lot, just outside Mr. Volkmann's window.

35.   **Harmful construction lead, dust and noise**.   About August 2017 Solid Ground commenced construction of new units at Santos Place while the building was inhabited by tenants.   Solid Ground failed to comply with federal regulations regarding lead-based paint present in the building, and it violated lease terms regarding noise.   Construction noise often started at 6:30 a.m. or earlier.   The lease specifies 10 p.m. to 8 a.m. as quiet time.   Construction is believed to have lasted seven months or more.

Similar Solid Ground Housing construction has taken place at Buildings 26 North and 26 South, and this construction is believed to have caused similar harms for tenants residing there.   Construction is believed to have lasted more than seven months.

36.     **Daily stalking, lurking, loitering and trespass by Solid Ground tenants.**
Many Solid Ground tenants are believed to have two responsibilities to Solid
Ground management and staff.  First is to service pedophiles and johns from the
surrounding neighborhoods.  Second is to harass anyone complaining about this
ostensible prostitution racket.  As an apparent result, Mr. Volkmann is harassed by
stalking, lurking, loitering and trespassing tenants practically every time he leaves
his apartment or apartment building.

37.     **Harassment at North Seattle College.**  Many instances of unwanted
sexual advances have been noted at North Seattle College, including an incident
documented on May 24, 2018 by Mr. Volkmann for North Seattle College's
Security Department.

38.     **Controversial research and subsequent threats**.  In 2018 Mr. Volkmann
verified that Barack Obama's mother, who is said to have earned a Ph.D. at the
University of Hawaii, in fact never graduated from Mercer Island High School in
Seattle.  This private, unpublished research might have been leaked via e-mail or
other electronic surveillance, and it has resulted in threats against Mr. Volkmann.

39.     **Criminal trespass, mail tampering and improper service of Order to
Show Cause.  Exhibit O**, an *ex parte* e-mail to Commissioner Henry Judson of the
King County Superior Court indicates that the Order was improperly withheld from
Volkmann's mailbox and delivered to Vokmann's kitchen table via illegal trespass
only two days before the scheduled hearing.

**Exhibit P,** Demurrer to Entire Complaint and Proposed Order Dismissing Complaint documents the improper service in more detail, along with stating reasons to dismiss the eviction complaint of Solid Ground.

40.    **Wrongful eviction.** Mr. Volkmann was wrongfully evicted from his long-time property interest, based upon the alleged violation of the improper lease rider shown in **Exhibit N**, which aims to abridge his First Amendment right to political speech and to the reporting of crime.

Mr. Volkmann was denied an opportunity to defend his tenancy in court due to apparent service-related criminal actions and fraudulent service enacted by plaintiff Solid Ground and/or their partners.

41.    **Diminished work capacity.**   Landlord negligence or crime have turned Volkmann's home into a battleground, and diminished his ability to work and study.   A theory of landlord behavior suggests social service providers like Solid Ground and Mercy Housing engage in racketeering that disables tenants and clients, rendering them to be captives of often self-serving nonprofit organizations.

1

2                                    **IV.    RELIEF**

3          Estimated damages of $10,769,600.00 are requested in this case, including some exemplary

4    damages for the purpose of promoting good public policy.  Damages are to be prorated based upon

5    individual exposure to harms.  The basis for heat damages is equivalent to the estimated rent in the

6    last seven years for each affected tenant during periods when apartments were not habitable.  The

7    basis for estimated construction-related dust, lead and noise is health-related damages in the

8    average amount of $25,000 per person prorated by documented exposure periods.  The basis for

9    lost income is an estimated $210,000 per year for Mr. Volkmann.  The basis for wrongful eviction

10   damages is direct costs plus exemplary damages to total $500,000 per wrongful eviction.  The

11   basis for exemplary damages for racketeering and other crimes is a lump sum average of $250,000

12   per tenant, prorated by time exposure to these harms.  The basis for e-mail hacking is $500 per e-

13   mail as provided for by 18 U, S, Code § 2520.  E-mails subjected to hacking are conservatively

14   estimated at 6,868, which include e-mails from the period beginning April 6, 2017.

15         This complaint also requests a trial by jury or bench trial of the facts in this matter.

16   Equitable relief of a temporary restraining order (TRO) staying eviction is requested in the

17   accompanying motion for a temporary restraining order.   When time permits the additional

18   equitable relief of a preliminary injunction staying eviction pending trial is expected to be

19   requested.  Additional motion for summary judgment on behalf of plaintiffs may follow.  Finally,

20   the plaintiffs would like to request that counsel be appointed to advocate on their behalf.

21

22

23

24

## V.    CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Date of signing:          July 30, 2018

Signature of Plaintiff

Printed Name of Plaintiff     Kevin Volkmann for plaintiffs

Exhibit A



515 Third Avenue· Seattle, Washington 98104· 206.464.1570· fax 206.624.4196· www.desc.org

March 27, 2014

To Whom It May Concern:

My name is Taoufik Atallah, and I am a Case Manager in the Connections program at DESC. I would like to take this opportunity to recommend Kevin Volkmann to your housing program. During the months that Kevin and I worked together, he displayed a number of qualities. He was punctual for our meetings and continued to attend appointments with a positive attitude. He is naturally independent as well as respectful with staff and other clients. He is working hard to obtain housing and is actively looking for opportunities to better his situation. Kevin strongly believes that by obtaining housing through your program, it will assist him in getting the stability and self-sufficiency that he desires. If you have any questions, please feel free to call me at (206) 515-1555 ext 3406.

Sincerely,

Taoufik Atallah
Connections Case Manager
Downtown Emergency Service Center
505 Third Ave
Seattle, WA 98104
(206) 515-1555 x3406

**Supportive Housing**
1811 Eastlake
Aurora House
Canaday House
Cottage Grove Commons
Evans House
Kerner-Scott House
Lyon Building
The Morrison
Rainier House
Union Hotel
Scattered Site

**Mental Health Services**
Crisis Respite
HOST-Outreach &
Engagement
MIST-Engagement
Housing & Stabilization
PACT-Intensive Team
SAGE-Case Management

**Employment Support**

**Chemical Dependency
Services**

**Emergency Shelter**

**Connections**

**Crisis Solutions Center**

**Pioneer Thrift**

**Board of Directors**
Ron Wright, Chair
Richard Stevenson, Vice Chair
Larry Smith, Secretary
Bryan Friend, Treasurer
Katherine Brandt
Laura Inveen
Veronica Kavanagh
Clark Kimerer
Mark Sidran
Sheryl V. Whitney

**Executive Director**
William G. Hobson

Exhibit B

# Seattle Police Department

## Certificate of Appreciation

Presented to:

## *Kevin Volkmann*

In recognition of your participation in learning about policing and public safety by completing the SPD One-day Community Police Academy.

Date: Saturday, August 20, 2016

Captain John Hayes

SEATTLE POLICE
EST. 1869
SERVICE · PRIDE · DEDICATION

One-day Academy

Exhibit C



---

## Kevin Volkmann: Honor Society Acceptance Letter

**From:** "Honor Society" <memberservices@honorsociety.org>
**To:** stock6@who.net
**Date:** May 12, 2018 8:13:39 AM

---

Kevin Volkmann - Honor Society Membership Acceptance Form



**Dear Kevin,**

Congratulations! You are invited to join the *Honor Society*. Accepting this distinction connects you with like-minded high achievers from your region and across the nation, both in person and through our society's web portal. Our network helps connect you with leaders from high profile universities and employers across the nation.

Honor Society is the preeminent organization dedicated to recognition of academic and professional success. Our society empowers members to achieve through scholarship, recognition, exclusive privileges, job opportunities and much more. Honor Society recognizes your achievements to date, and builds a framework for future success.

Exhibit D



## Exhibit E



---

## BUS 298 Proposal

| | |
|---|---|
| **From:** | "Volkmann Kevin" <kevinv@northseattle.edu> |
| **To:** | larry.hopt@seattlecolleges.edu |
| **Cc:** | david.eberhardt@seattlecolleges.edu |
| **Bcc:** | stock6@who.net |
| **Date:** | Apr 6, 2017 1:19:10 PM |

---

Attached is the latest proposal formulation in 206 words.

I will endeavor to meet with Dr. Hopt briefly after one of his upcoming morning classes.

Kevin Volkmann
950633034

*This e-mail may contain confidential and privileged material, and is for the sole use of the intended recipient.  Use by an unintended recipient or unauthorized distribution is prohibited, and may be a violation of law.  If you are not certain that you were intended to receive this e-mail, please do not read this e-mail or any attached items, and delete the e-mail and any attachments, including any copies thereof, and inform the e-mail's author in writing that you have done so.*

*Thank you.*

---

**Attachments**

- Memorandum 1.4.pdf

Exhibit F



---

## Read: Fw: BUS 298 Proposal

**From:**    "Hopt, Larry" <Larry.Hopt@seattlecolleges.edu>
**To:**      "Kevin Volkmann" <stock6@who.net>
**Date:**    Apr 7, 2017 10:24:14 AM

---

Your message

   To: Hopt, Larry
   Subject: Fw: BUS 298 Proposal
   Sent: Friday, April 7, 2017 7:37:08 AM (UTC-08:00) Pacific Time (US & Canada)

 was read on Friday, April 7, 2017 10:24:14 AM (UTC-08:00) Pacific Time (US & Canada).

---

**Attachments**

- message-disposition-notification-attachment

Exhibit G

## CONFIDENTIAL DRAFT

# Memorandum

TO:     Larry Hopt, JD, NSC

CC:     Dave Eberhardt, NSC

FROM:  Kevin Volkmann, NSC Student 950633034

DATE:   April 6, 2017

RE:     BUS 298 Supervision Request

As you know, I seek to conduct multi-faceted business planning in a self-designed course. Dr. Todino has suggested listing 6 learning objectives (with due dates) to define the course, and I do so here:

1. Report the role of university and college trustees and regents at specific institutions and document how they are selected and may be removed. (April 21)
2. Research 11 qualified university trustee candidates and nominate them to that post. (April 21)
3. Prepare a non-profit presentation about emergency transportation for the Washington Governor's Office. (April 27)
4. Research and document a "business family tree" showing current and past professional roles of kin. (May 6)
5. Interview at least one corporate attorney who works at a major national law firm. (May 31)
6. Report in detail specific causes of action for premises liability tort cases. (June 11)

Dr. Todino suggests that BUS 298 may be taken multiple times. As Mr. Eberhardt knows, the scheduling flexibility of BUS 298 makes it a better choice for me now than BUS 152 and BUS 153, which I may also attend later.

DRAFT                                    CONFIDENTIAL                                    Version 1.4

Exhibit H

# BUS 298:
# Residential Civil Rights Case

Prepared for Larry Hopt, JD
By Kevin Volkmann, 950633034
8/30/17

## Prospective Plaintiffs

Plaintiffs will include residential tenants in low-income, subsidized housing at Solid Ground Housing in
Magnuson Park, Seattle.  The campus now includes seven buildings without air-conditioned apartments,
which are shown below.  An eighth apartment complex without air conditioning, Building 9, is slated to
start construction in mid-September 2017.  Many tenant witnesses will testify.

| Apartment Name | Housing Type | Units | # of Plaintiffs | Issues |
|---|---|---|---|---|
| Santos Place | Transitional | Approximately 40-unit capacity. | Estimated 12 current heat plaintiffs. | Heat, trespass, ADA access, social services, construction and noise. |
| Phyllis G. Kenney Place Apartments | Subsidized: Single and Family | 54 units. | Estimated 16 current heat plaintiffs. | Heat, social services, road noise, construction, seismic. |
| Brettler Place, Building 1 | Subsidized: Family | 26 units (estimated). | Estimated 10 current heat plaintiffs. | Heat, noise, social services. |
| Brettler Place, Building 2 | Subsidized: Family | 26 units (estimated). | Estimated 10 current heat plaintiffs. | Heat, noise, social services. |
| Brettler Place, Building 4 | Subsidized Housing: Family | 15 units. | Estimated 1 current heat plaintiff. | Heat, social services. |
| Building 62 North | Temporary: Domestic Violence | 24 units (estimated). | Estimated 12 current heat plaintiffs. | Heat, social services, road noise. |
| Building 62 South Apartments | Temporary: Domestic Violence | 24 units (estimated). | Estimated 12 current heat plaintiffs. | Heat, social services, road noise. |
| Building 9 (planned) | Subsidized: Family | 148 planned. | Estimated 48 prospective heat plaintiffs. | Heat, road noise, seismic. |
| **TOTALS** | | **169 current (estimated)** | **61 current heat plaintiffs (estimated).** | |

Mostly verified information for Santos Place Apartments is shown in the following table.

| Santos Place Unit # | Name | Issues | Disability | Recent Witness/ Guests? | Race/Ethnicity |
|---|---|---|---|---|---|
| 1 | David Mbugua | Heat, trespass | Psychological | Yes | African |
| 2 | Desiree Taylor | Heat | None | | African |
| 6 | Michael Anic | Heat, noise, trespass | None | | Caucasian |
| 7 | Jeffrey Hertzberg | Heat, noise | Psychological | | Caucasian |
| 104 | Tracie Phillips | Heat | Psychological | | Caucasian |
| 105 | James Converse | Heat, ADA accommodation | Physical | | Caucasian |
| 112 | Jorge Murga | Heat, noise | Psychological | | Hispanic |
| 113 | Anthony Hornbeak | Heat, noise | None | | African |
| 114 | Kevin Volkmann | Heat, noise, trespass | Physical | | Caucasian |
| 202 | Lucina Valle Martinez | Heat, trespass | None | Yes | Hispanic |
| 211 | Fabian Aguilar | Heat, noise | Psychological | | Hispanic |
| 212 | Jo-Ann Tsui-Potter | Heat, noise, trespass | None | Yes | Asian |

Phyllis G. Kenney Place renters Mitch Cameron and Adrienne Karls have been interviewed and indicate that temperatures have been intolerable at Kenney Place apartments. Mitch also lived in a south-facing Santos Place apartment where heat was excessive.

## Prospective Defendants

**Mercy Housing Northwest** is the local office of **Mercy Housing**, a national non-profit developer and property manager with operations in 41 states, headquartered in Denver, CO. **Mercy Housing Northwest** is the property manager for the above apartment buildings, and it owns the Building 9 property, soon to be re-developed. **Mercy Housing** shows Form 990 assets of $72 million, and **Mercy Housing Northwest** shows assets of $26 million.

According to Guidestar, "**Mercy Housing Northwest** has developed and currently owns 43 properties (1,743 rental homes) throughout Washington, from Puget Sound cities like Bellingham, Everett, Kent, Tacoma and Olympia to central and eastern Washington towns like Yakima, Chelan and Cheney."

"**Mercy Housing's** core markets include Arizona, California, Colorado, Idaho, Illinois, Georgia and Washington."

**Solid Ground** is a Seattle/Fremont-headquartered non-profit operating on the premise that racism causes poverty.  They are the owner of the first seven properties listed above, and their 2015 Form 990 shows $21 million in revenue, $12 million in total assets.  In addition to owning the properties, **Solid Ground** contracts to provide social services.

## Issues

### Heat

According to Mercy Housing Northwest, *none* of the current or planned apartments will have landlord-provided air conditioning.  Rooms facing directly south overheat during the summer months, and for much of the rest of the year, too.  Conservative estimates of the harm may be summarized by the following figures.

- Average estimated number of months in breach of habitability standards:  4 months/year.
- Average estimated length of current tenancies:  3 years.
- Average estimated rents: $850/month.
- Estimated number of plaintiffs: 61.
- **4 months/year x 3 years x $850/month x 61 plaintiffs = $622,200.**
- If past tenants are included in these calculations, the numbers may be much higher.

In addition to monetary damages, specific performance may be requested: air conditioning should be installed in southward-facing apartments, and, to save energy, trees and overhangs should be installed for shade.  To address security, fencing and outdoor cameras should be installed.

### Noise

Tenants desperate for cooling must leave their windows open practically all the time.  Unfortunately, tenants at Brettler Place Apartments are extremely noisy 24 hours per day.  The warranty or covenant of peaceful enjoyment is breached by property managers who refuse to enforce reasonable noise standards on tenants, or who might encourage tenants to stage loud disturbances.

### Trespass

Apartment buildings are located on separate parcels, except Buildings 62 North and South, and Brettler Place Buildings 1 and 2, which share the same properties.  The apartments are near to one another and are served by public right-of-ways.  Brettler Place and Buidling 62 tenants habitually trespass on Santos Place property, resulting in major disturbances and crimes.

I have suggested 1) that fences be installed and 2) that one of the Santos Place driveways be closed to prevent the relentless onslaught of pedestrian and automobile traffic through Santos Place property.  Mercy Housing Northwest and Solid Ground have failed to take any action to prevent trespassing on Santos Place property, and wrongly suggest that because they own the property (or lease it from the City of Seattle), they can allow non-tenants unlimited access to the property.

Juvenile prostitutes at Brettler Place evidently are active sexual predators, stalking adults, and almost certainly raping and molesting other children.

CONFIDENTIAL Version 1.4

## Holding

### Warranty of Habitability

Owners Solid Ground and property managers Mercy Housing Northwest are in breach of the warranty of habitability regarding overheating for many, if not all, apartment units.

### Civil Rights

Because tenants tend to be poorly educated, low-income, elderly or disabled, Solid Ground and Mercy Housing may have deliberately taken advantage of their lack of understanding of their legal rights, or may have intimidated tenants who tried to complain.

### Covenant of Peaceful Enjoyment

Solid Ground and Mercy Housing Northwest have not taken effective steps to stop constant disturbances on the properties.  Although they may have evicted some offending tenants, many others have been allowed to continue.  Solid Ground and Mercy Housing Northwest appear to have sponsored criminal activities to harass complainants: criminal trespass, loitering, stalking, assault, battery, vandalism, theft, harassment, prostitution, drug dealing and other crimes have occurred.   In summer 2017 everal park events have been cancelled due to crime at Brettler Place.

### Racketeering

Evidently 24-hour prostitution traffic at Brettler Place seems to be a major source of ongoing disturbances and crime.  There has been mention of illegal drug abuse in the park and at Santos Place.

Evidently Solid Ground and Mercy Housing Northwest have encouraged Brettler Place tenants to criminally trespass, loiter, stalk, assault, batter, vandalize, steal, harass, and solicit other tenants.

### Public Health and Safety

Brettler Place juvenile prostitutes pose a present danger to other children in the schools and neighborhood.  Solid Ground evidently sponsors juvenile prostitution.

## Rationale

One rationale for a federal civil rights case is that the basic rights of some tenants are being deliberately violated for the sake of ideological extremism and sponsorship of criminal activity by Solid Ground and Mercy Housing Northwest.  Federal racketeering laws most likely apply to Solid Ground and Mercy Housing Northwest, whose contributors evidently include pedophiles from the neighborhood who patronize juvenile prostitutes at Brettler Place Apartments.  Evidently Solid Ground and Mercy Housing Northwest are running houses of prostitution.  Evidently some tenants do not follow rules, obey laws or pay their fair share of rent.

CONFIDENTIAL

Stopping the planned development of 148 more units at Building 9 by Mercy Housing will prevent additional noise, dust, traffic and crime in an already overcrowded public park.  It will prevent Mercy Housing Northwest from leasing apartments which will not meet minimal standards of habitability.

Local roads, schools, police, and park facilities are already operating with insufficient capacity.  A criminal culture has invaded the park, to the detriment of law-abiding citizens.  Adding over 200 more unsupervised low-income children to the park will harm the health and safety of all.

## Additional Issues

Building 9 and Phyllis G. Kenney Place are located on a **seismic liquefaction zone** and are probably not suitable for permanent occupancy.

Santos Place has **minimal ADA access** and houses at least one tenant, James Converse, requiring special access.

Mercy Housing Northwest **failed to adequately notify the public about Building 9 plans**, with only a small group of insiders attending meetings.  Only two citizens commented to the Seattle City Planning and Development Department, reflecting this lack of publicity.  My official comments were the only substantive public input.  The other commenter simply remarked about his unfamiliarity with the project.

Solid Ground, Mercy Housing Northwest, and the Seattle Police Department evidently have **obstructed justice in thousands of criminal matters** related to Solid Ground Housing.  A similar epidemic of criminal activity is located at Burke Gilman Place, another subsidized housing project 1.9 miles south of Solid Ground Housing on Sand Point Way.

Evidence of unlawful entry to apartments has emerged, and, for example, a Samsung Galaxy S5 smartphone and accounting records were evidently stolen from my apartment.

A **fatal, police-related shooting** occurred at Brettler Place in June 2017.  A loud, angry protest march was held in the park, and additional protests are expected when this matter goes to trial.  An expected acquittal of police officers could result in significant civil unrest.

A map of Solid Ground Housing is shown below.



## Exhibit I



---

## Three juvenile prostitutes stalked me this evening.

| | |
|---|---|
| **From:** | "Kevin Volkmann" <stock6@who.net> |
| **To:** | "Humberto Alvarez" <humbertoa@solid-ground.org>, "Tamara Brown" <tamarab@solid-ground.org>, "H Delores" <deloresh@solid-ground.org> |
| **Cc:** | "Brian Edwards" <bredwards@mercyhousing.org>, "Marc Hoffman" <marc.hoffman@seattle.gov>, margaret.olsen@seattle.gov, michael.lanz@seattle.gov, dianne.newsom@seattle.gov, Adrian.Diaz@seattle.gov, opa@seattle.gov |
| **Date:** | Jul 21, 2017 9:17:58 PM |

---

Solid Ground:

As I walked from Magnuson Park toward 62nd Avenue about 7:30 p.m., 3 African juvenile female prostitutes chased me away. Aparently these three prostitutes are residents of Brettler Place.

It seems most likely that Solid Ground is organizing this daily harassment, likely in coordination with SPD and other organized criminals involved in illegal prostitution.

This is a demand that you cease your criminal activity and terminate the tenancies of these juveniles and their families.

Kevin Volkmann

cc:  SPD, Magnuson Community Center, Mercy Housing

*This e-mail may contain confidential and privileged material, and is for the sole use of the intended recipient. Use by an unintended recipient or unauthorized distribution is prohibited, and may be a violation of law. If you are not certain that you were intended to receive this e-mail, please do not read this e-mail or any attached items, and delete the e-mail and any attachments, including any copies thereof, and inform the e-mail's author in writing that you have done so.*

*Thank you.*

9/26/2017  mail.com - Continuing criminal harassment by Brettler Place tenants.

Case 2:18-cv-01114-RSL  Document 3  Filed 07/30/18  Page 42 of 58

mail.com

Exhibit J

# Continuing criminal harassment by Brettler Place tenants.

| | |
|---|---|
| **From:** | "Kevin Volkmann" <stock6@who.net> |
| **To:** | "Marc Hoffman" <marc.hoffman@seattle.gov> |
| **Cc:** | "Michael Lanz" <michael.lanz@seattle.gov>, "Humberto Alvarez" <humbertoa@solid-ground.org> |
| **Bcc:** | "Kevin Volkmann" <stock6@who.net> |
| **Date:** | Sep 26, 2017 8:13:48 PM |

Marc:

As you know, I take strong measures to avoid all Brettler Place tenants, who are often idlers who trespass, loiter, lurk and stalk.

Tonight a Caucasian Brettler Place juvenile leaving the Magnuson Community Center about 7:30 p.m. started yelling at me as I walked on the public right-of-way along 62nd Avenue NE on my way home.

The juvenile also pursued me on a bicycle, continuing to shout insults.

I do not know this juvenile, and this juvenile has no way to know anything about me, except being told by others. This evident gang hatred directed toward me again tonight constituted criminal harassment and assault.

As you know, it is your duty to prevent crime on City property, and I urge you to take all necessary measures to assure that such incidents do not occur again.

Kevin Volkmann
Elected Democratic Precinct Committee for SEA 46-2267, Magnuson Park

*Post Script*: Seattle Police Department policies cannot legally allow officers to disregard enforcement of laws that the police department finds inconvenient. The Washington Legislature, Congress and Courts make the laws, not SPD's staff.

*This e-mail may contain confidential and privileged material, and is for the sole use of the intended recipient. Use by an unintended recipient or unauthorized distribution is prohibited, and may be a violation of law. If you are not certain that you were intended to receive this e-mail, please do not read this e-mail or any attached items, and delete the e-mail and any attachments, including any copies thereof, and inform the e-mail's author in writing that you have done so.*

*Thank you.*

## Exhibit K



---

## More instances of apparent criminal harassment.

| | |
|---|---|
| **From:** | "Kevin Volkmann" <stock6@who.net> |
| **To:** | "Humberto Alvarez" <humbertoa@solid-ground.org> |
| **Cc:** | "Justin Wang" <jwang@mercyhousing.org> |
| **Date:** | Sep 28, 2017 4:16:55 PM |

---

Humberto:

Every day after I have been away from my apartment at required appointments, new faint orange stains have appeared on my otherwise clean white sofa.

Moreover, frequently buttons on shirts and pants that were solidly sewn become loose and fall off after I have been away from my apartment.

Freshly cleaned towels in my bathroom sometimes have strong body odor after I have left the apartment for a while.

**Please refrain from allowing anyone into my apartment while I am away.**

Kevin Volkmann

cc:  Mercy Housing

*This e-mail may contain confidential and privileged material, and is for the sole use of the intended recipient. Use by an unintended recipient or unauthorized distribution is prohibited, and may be a violation of law. If you are not certain that you were intended to receive this e-mail, please do not read this e-mail or any attached items, and delete the e-mail and any attachments, including any copies thereof, and inform the e-mail's author in writing that you have done so.*

*Thank you.*

# Exhibit L

**Trespassing and Assault Perpetrators**



## Exhibit M

AFTER RECORDING RETURN TO:

Sand Point Site B Stage 1 LP
Solid Ground Washington
1501 North 45th Street
Seattle, WA 98103



```
200910060000703
CUSTOMER                    EAS            78.00
PAGE-001 OF 017
10/06/2009 12:28
KING COUNTY, WA
```

### AMENDED AND RESTATED
### RECIPROCAL EASEMENT AGREEMENT

| | |
|---|---|
| *Grantors:* | THE CITY OF SEATTLE, OFFICE OF HOUSING<br>THE CITY OF SEATTLE, PARKS DEPARTMENT<br>SAND POINT HOUSING ASSOCIATES I LIMITED PARTNERSHIP<br>SAND POINT COMMUNITY CONNECTIONS LLC |
| *Grantees:* | THE CITY OF SEATTLE, OFFICE OF HOUSING<br>THE CITY OF SEATTLE, PARKS DEPARTMENT<br>SAND POINT HOUSING ASSOCIATES I LIMITED PARTNERSHIP<br>SAND POINT COMMUNITY CONNECTIONS LLC |
| *Abbreviated Legal Description:* | SHORT SUBDIVISION No. 9904055, REC 19991214900007 |
| *Tax Parcel No.:* | 022504-9066-07; 022504-9067-06; 022504-9068-05; 022504-9069-04; 022504-9070-01 |

THIS AMENDED AND RESTATED RECIPROCAL EASEMENT AGREEMENT (this "Agreement") is made as of _____ ___, 2009 by and among **THE CITY OF SEATTLE, OFFICE OF HOUSING**, a municipal corporation of the State of Washington ("OH"), **THE CITY OF SEATTLE, PARKS DEPARTMENT**, a municipal corporation of the State of Washington ("PARKS"), **SAND POINT HOUSING ASSOCIATES I LIMITED PARTNERSHIP**, a Washington limited partnership ("LP"), and **SAND POINT COMMUNITY CONNECTIONS LLC**, a Washington limited liability company ("LLC"), each as grantors and grantees.

### RECITALS

A.    On April 24, 1998, the City of Seattle, a municipal corporation of the State of Washington ("City") acquired title to portions of the Naval Station Puget Sound at Sand Point ("Sand Point Property") from the United States government under terms and conditions

---

*Amended and Restated Easement Agreement*

**EXCISE TAX NOT REQUIRED**
King Co. Records Division
By _____, Deputy

*Page 1*

requiring, among other public and community uses, the development and management of housing for the homeless and related services.

B.      OH leased portions of its interest in the Sand Point Property to the Sand Point Community Housing Association, a Washington nonprofit corporation ("CHA") pursuant to that certain lease dated April 22, 1998, recorded under King County Recording No. 9804240454, rerecorded under No. 9805221596 and amended by that certain First Amendment to Lease dated September 10, 1999, recorded under King County Recording No. 19990916001595 (together, the "CHA Lease").

C.      In 1999, OH and Parks filed that certain Short Subdivision No. 9904055, recorded under King County recording number 19991214900007 ("Short Plat"). The Short Plat covered a portion of the Sand Point Property and created (i) Parcels A, B, C, D, and E (collectively referred to herein as the "Parcels"); and (ii) an easement and maintenance agreement benefiting the Parcels and burdening Parcel A and Parcel B ("Easement") for a fire apparatus access road pursuant to the Seattle Fire Code ("Access Road"). The Parcels are included in the CHA Lease. The Parcels are set forth in the legal description attached hereto as *Exhibit A* and incorporated herein by this reference.

D.      The CHA subleased Parcel A to the LP pursuant to that certain sublease dated as of December 7, 1998, and recorded under King County Recording No. 9812071912, and that certain first amendment to sublease dated as of April 28, 1999, recorded under King County Recording No. 9904291854 ("the LP Sublease").

E.      Subsequent to entering the LP Sublease, the CHA assigned the CHA Lease and the LP Sublease to the LLC pursuant to that certain assignment, assumption and consent agreement dated as of April 23, 2008, recorded under King County Recording No. 2008423001676 ("LLC Assignment").

F.      Following the LLC Assignment, OH and the LLC amended and restated the CHA Lease pursuant to that certain amended and restated lease dated as of April 23, 2008, recorded under King County Recording No. 2008423001677 ("LLC Lease").

G.      Currently, OH owns the Parcels, the LLC holds a leasehold interest in the Parcels, and the LP holds a sub-leasehold interest in Parcel A. Collectively, (i) OH, Parks, the LLC and the LP will hereinafter be referred to as "Parcel A Owner"; and (ii) OH, Parks and the LLC will hereinafter be referred to as "Parcel B Owner".

H.      Parcel B Owner now desires to construct improvements consisting of two multi-family structures with 52-units on Parcel B ("Project"). In order to accommodate the plans for the Project, Parcel Owner B desires to amend the configuration of the existing Access Road between Parcel A and Parcel B. Parcel B Owner shall reconfigure the Access Road at its sole cost.

*Amended and Restated Easement Agreement*                                                          *Page 2*

I.      Pursuant to the Short Plat, the Easement may be terminated by unanimous written vote of the owners of the Parcels. Parcel A Owner and Parcel B Owner have voted to amend and restate the Easement in accordance with the Project plans.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Parcel A Owner and Parcel B Owner agree to the following:

1.   **Termination**. The terms of the Easement are hereby terminated.

2.   **Easement over Parcel A**. Subject to the terms and conditions of this Agreement, Parcel A Owner hereby grants in favor of Parcel B Owner and its successors, assigns, and invitees, a perpetual nonexclusive easement for ingress, egress and an Access Road, to and from 62nd Avenue NE over that portion of Parcel A, attached hereto as *Exhibit B* ("Amended Easement A").

3.   **Easement over Parcel B**. Subject to the terms and conditions of this Agreement, Parcel B Owner hereby grants in favor of Parcel A Owner and its successors, assigns, and invitees, a perpetual nonexclusive easement for ingress, egress and an Access Road to and from 62nd Avenue NE over that portion of Parcel B, attached hereto as *Exhibit C* ("Amended Easement B").

Together, the Amended Easement A and Amended Easement B may hereinafter be referred to as the "Amended Easement Area".

4.   **Limitation on Use**.

A.   **Parcel A**: Parcel A Owner, and its successors and assigns, shall not construct or place any structure, building or other surface or subsurface improvements, whether temporary or permanent, in the Amended Easement Area. Parcel A Owner, its successors, assigns and invitees, shall not park within the Access Road.

B.   **Parcel B**: Parcel B Owner shall not construct or place any structure, building or other surface or subsurface improvements, whether temporary or permanent, in the Amended Easement Area, provided however, Parcel A Owner and Parcel B Owner hereby acknowledge, affirm and confirm that Parcel B Owner shall remove the existing Access Road and replace it with a new Access Road over the Amended Easement Area pursuant to the Project plans. Parcel B Owner, its successors, assigns and invitees, shall not park within the Access Road.

5.   **Maintenance, Repair and Replacement**. At all times, the use and exercise of the Amended Easement Area granted pursuant to this Agreement shall be conducted in a safe manner and in compliance with all applicable governmental requirements. Without limiting the generality of the preceding, all repairs and replacements of the Access Road shall meet or exceed all applicable requirements and specifications of all governmental agencies having jurisdiction of matters relating thereto.

*Amended and Restated Easement Agreement*                                          *Page 3*

All costs and/or fees to maintain, repair or replace the Access Road which is subject to this Agreement shall be proportionally allocated between Parcel A Owner and Parcel B Owner based on the square footage of their respective parcels as follows:

| PARCEL | SQUARE FEET | PERCENTAGE OWNERSHIP / MAINTENANCE LIABILITY |
|--------|-------------|----------------------------------------------|
| Parcel A | 54,557 | 32% |
| Parcel B | 114,110 | 68% |
| Total | 168,667 | 100% |

6. **Restoration**. Upon completion of any activities of Parcel A Owner or Parcel B Owner which disturb the Access Road, including any fences or other improvements now located on or near the Amended Easement Area or permitted by this Agreement, Parcel A Owner or Parcel B Owner shall promptly restore the Amended Easement Area and such improvements to the condition they were in immediately prior to such disturbance.

7. **Certain Rights and Obligations of Burdened Party and Benefited Party**. For purposes of this Section "Benefited Party" refers to the property and the person or entity which owns such property in whose favor an easement is granted pursuant to this Agreement and "Burdened Party" refers to the property and the person or entity which owns such property which is burdened by an easement granted pursuant to this Agreement.

   A. **Indemnity**. The Benefited Party shall indemnify, defend, and hold harmless the Burdened Party from and against any and all losses, claims, actions, damages, liabilities, penalties, fines, or expenses, of whatsoever nature, including, without limitation, reasonable attorneys' fees and costs on account of mechanics' lien claims, injury to persons, the death of any person, or damages to property ("Claims") arising from the use of the Amended Easement Area granted pursuant to this Agreement, or from any activities contemplated by this Agreement, in each case undertaken by the Benefited Party or any other person claiming by, through, or under the Benefited Party, except to the extent any such Claim results from the wrongful acts or gross negligence or willful and wanton acts of the Burdened Party.

   B. **Ingress and Egress**. Benefited Party has the right of access over and across the property of the Burdened Party for itself and its agents to the extent reasonably necessary in order to exercise Benefited Party's rights under this Agreement subject to the terms and conditions of this Agreement. In exercising such right of ingress and egress, Benefited Party shall provide reasonable advance notice to the Burdened Party of proposed activities.

*Amended and Restated Easement Agreement*                                                      *Page 4*





Exhibit N

# MERCY HOUSING

## ZERO TOLERANCE FOR DISCRIMINATORY BEHAVIOR

### ATTACHMENT G

Mercy Housing/<u>Santos Place</u> has a zero tolerance policy toward discriminatory behavior.  Expressions and actions of prejudice and disrespect toward or about persons based on issues of race, ethnic background, religion, age, disability, gender, or sexual orientation are strictly prohibited.

*I/We acknowledge that I/We have read and understand this policy.*

Apartment Number: <u>213</u>

_____
Tenant Signature

_____
Tenant Signature

_____
Tenant Signature

_____
Tenant Signature

_____
Property Manager Signature

<u>10/25/17</u>
Date

_____
Date

_____
Date

_____
Date

<u>10/25/17</u>
Date

*I reserve the right to discriminate on the basis of educational level and professional objectives; and to discriminate against criminals. KV*

7/23/2018 mail.com - Demurrer to the Entire Complaint and Proposed Order Dismissing Complaint.

Case 2:18-cv-01114-RSL Document 3 Filed 07/30/18 Page 52 of 58



Exhibit O

# Demurrer to the Entire Complaint and Proposed Order Dismissing Complaint.

**From:** "Kevin Volkmann" <kevin.volkmann@consultant.com>

**To:** henry.judson@kingcounty.gov

**Date:** Jul 23, 2018 5:58:38 PM

Commissioner Judson:

Regarding case 18-2-16260-2SEA (Solid Ground Washington v. Kevin Volkmann), I have attached PDF and DOC files for Demurrer to the Entire Complaint and a proposed Order Dismissing Complaint for Tuesday July 24, 2018 hearing on advice of attorney.

I received improper late service of the Hearing to Show Cause for Tuesday July 24, 2018. It was somehow placed in my apartment and discovered only Sunday July 22, 2018, placing me at a grave disadvantage.

I intend to file case documents as a pauper, and must request that my court fees be waived.

In tomorrow's hearing, in addition to moving that the case be dismissed, I intend to address the Order to Show Cause with some of the points from the Demurrer, and with additional information about my very strong defensive case. I expect to be able to call extremely persuasive witnesses on my behalf.

I expect that the Court will dismiss the matter or refer the matter to trial, and, of course, **I will provide the plaintiff's attorneys with the documents sent to you in this e-mail letter.**

Please recognize that I am physically exhausted at this time.

Respectfully,

Kevin Volkmann
Defendant in this matter.

*This e-mail may contain confidential and privileged material, and is for the sole use of the intended recipient. Use by an unintended recipient or unauthorized distribution is prohibited, and may be a violation of law. If you are not certain that you were intended to receive this e-mail, please do not read this e-mail or any attached items, and delete the e-mail and any attachments, including any copies thereof, and inform the e-mail's author in writing that you have done so.*

*Thank you.*

**Attachments**

- Demurrer to Entire Complaint.docx
- Demurrer to Entire Complaint.pdf
- Order Dismissing Complaint.docx
- Order Dismissing Complaint.pdf

## Exhibit P

1   Kevin Volkmann (pro se)
    4244 University Way NE, #45123
2   Seattle, WA 98105
    646-389-3323
3

4

5              IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

6                   IN AND FOR THE COUNTY OF KING

7

8

9   SOLID GROUND WASHINGTON,              | Case No.: 18-2-16260-2SEA

10          Plaintiff,

11  vs.                                   | DEMURRER TO ENTIRE COMPLAINT

12  KEVIN VOLKMANN,                       | DATE: JULY 24, 2018
                                            TIME: 9:00 AM
13          Defendant                       PLACE: ROOM W325 OF THE KING COUNTY
                                            COURTHOUSE, 516 THIRD AVENUE, SEATTLE,
14                                          WASHINGTON

15

16

17          Defendant Kevin Volkmann demurs to the complaint filed by the plaintiff Solid Ground

18  Washington on the following grounds:

19      1.  **The plaintiff is not an injured party.** Rents have been paid. The United States Constitution

20          Article III requires that there be an injured party meeting a three-part test:

21              a.  There must be an "injury in fact" which is concrete, imminent, and not hypothetical.

22              b.  There must be causal connection between the conduct complained of that is traceable

23                  to the challenged action of the defendant, and not the result of third parties not before

24                  the court.

25              c.  It must be likely that any injury will be redressed by a favorable decision.

26          The plaintiff has no protected interest in its malicious support for massive, ongoing criminal gang

27          activity of trespassers on the property. Complaints received by the plaintiff were a direct result of

28  DEMURRER TO ENTIRE COMPLAINT DATE: JULY 24, 2018TIME: 9:00 AMPLACE: ROOM W325 OF THE
    KING COUNTY COURTHOUSE, 516 THIRD AVENUE, SEATTLE, WASHINGTON - 1

the criminal conduct of trespassers, which the plaintiff failed to address over a period of years, and for which they have a duty to take action under contractual warranties of habitability and peaceful enjoyment of the property.  Given that the defendant has retracted cited statements pending further evaluation, the Court has no prospect of further redressing non-existent injuries said to be related to a claimed breach with any further action in might take.

2. **The Landlord-Tenant Court division lacks jurisdiction.** This unit of the Superior Court with its expedited procedures aimed at preventing the economic loss of landlords is not the correct jurisdiction for this case.  Rents have been paid and have been guaranteed through the next year.  The torts suggested by the plaintiff (slander, discrimination) are unrelated to possession of the property *per se*.  These claims have nothing to do with the defendant's possession of the property.

3. **The plaintiff's suit is retaliatory.** Evidently the plaintiff inflicted gang harassment in summer 2017 against the defendant for his proposed premises liability tort case against Solid Ground, which was developed formally in a college course as early as May 2017.  Further complaints of juvenile sex trafficking and drug trafficking to federal authorities including HUD, the U.S. Department of Education, the Federal Bureau of Investigation and others formed the impetus for the current retaliatory complaint.  Of course, such retaliation is expressly forbidden by landlords under HUD rules.

4. **The lease provision is unconstitutional.** The First Amendment guarantees freedom of political expression, which must always include the ability to report criminal activity, as was practically always the case in defendant's e-mail letters.  Moreover, a communications strategy of making targeted expressions of disgust – without any trace of malice – is a valid, appropriate approach backed by professional communications practitioners and researchers.  The defendant responded to non-resident juvenile prostitute gangs who trespassed, stalked or assaulted him daily.  These non-residents of Santos Place Apartments were not protected by a Good Neighbor provision of the lease when they were committing crimes at Santos Place Apartments.

DEMURRER TO ENTIRE COMPLAINT DATE: JULY 24, 2018TIME: 9:00 AMPLACE: ROOM W325 OF THE KING COUNTY COURTHOUSE, 516 THIRD AVENUE, SEATTLE, WASHINGTON - 2

5.  **E-mails were protected speech in their particulars.**  To wit, e-mails reported:

    a.  Objective truth.

    b.  Statements of informed analysis or opinion.

    c.  The reporting of crime.

    d.  Statements about outside individuals not covered by lease provision.

    e.  Statements protected by qualified privilege.

    f.  Statements never sent to individuals characterized therein.

    g.  Testimony to public officials.

    h.  Statements later retracted pending further evaluation.

6.  **The plaintiff has unclean hands.**  The plaintiff is not entitled to any relief due to its involvement in juvenile sex trafficking and drug trafficking on the property.  Solid Ground maintains a free-for-all crime zone in the Santos Place Apartments parking lot, which has no security cameras or security lights.  This parking lot is the preferred crime spot for non-residents to illegally park, trespass, stalk, illegally smoke, commit theft and vandalism and to commit sex and drug crimes.  (Other properties leased by Solid Ground have outdoor security cameras and security lights, which act as a deterrent to crime.)

7.  **Solid Ground discriminates against the defendant on religious grounds.**  As the Court may note, Solid Ground Washington was responsible for the founding of the pagan Fremont Solstice Parade, and thereby has been a sponsor of indecent crime, as well as an opponent of individual belief.  Solid Ground favors its ostensible prostitute tenants, discriminating against others.  For instance, Solid Ground rewarded an ostensible prostitute tenant for assaulting me -- literally chasing me around the building over some perceived laundry discrepancy -- by giving that female a larger apartment.

8.  **Solid Ground discriminates against the defendant on national origin grounds.**  As a former resident of Europe, the defendant has been mistreated, mislabeled, abusively derided and defamed.  Tamara Brown of Solid Ground, for instance, has repeatedly insisted on labeling the defendant a Hispanic or Latino, when he has absolutely no Hispanic or Latino

1   blood.  Those exhibiting Irish or African patterns, such as homosexuality, or alcohol and drug

2   culture have been given extended licenses to commit crime and violate the lease.

3   9.   **Solid Ground discriminates against the defendant on the basis of disability, purposely**

4   **inflicting emotional distress.**  The defendant was severely injured in a 2015 automobile hit-

5   and-run assault in which he was a pedestrian.  Moreover, the defendant has suffered hundreds

6   of batteries caused by street gangs.  As a result, the defendant suffers ongoing disability and

7   pain, which may also include diagnoses of PTSD.  Solid Ground has inflicted further

8   emotional distress by failing to take steps to enforce trespass law, thereby allowing gangster

9   non-tenants to over-run the property with criminal activity.

10   10.   **Solid Ground seeks to inflict irreparable harm by forcing the tenant into a shelter with**

11   **uncontrolled street gangs.**  Given the tenant's evident disabilities, Solid Ground ought to be

12   focusing on improving conditions at Santos Place Apartments, rather than throwing out

13   disabled, vulnerable tenants who will suffer irreparable harm among shelter gangs.

14   11.   **Due to landlord malice, crime or negligence, the defendant has suffered frustration of**

15   **purpose.**  Because the defendant must spend large amounts of time daily to avoid predatory

16   non-tenants who trespass upon the property, and who stalk him elsewhere (as is the pattern of

17   aggressive prostitutes), he may have been frustrated in meeting a lease term, however

18   unconstitutional it may be, and this frustration is due entirely to Solid Ground's ostensible

19   sponsorship of trespassing and  juvenile sex and drug trafficking on the premises.

20   12.   **Plaintiff's attorneys, Solid Ground, Mercy Housing Northwest and local U.S.P.S.**

21   **personnel appear to have tampered with the delivery of the plaintiff's Order to Show**

22   **Cause, resulting in unconscionable delay and harm to defendant**.  The order was never

23   delivered to the defendant's mailbox, but was rather placed in his apartment and found only

24   on July 22, 2018.   The circumstances of the delivery suggests unlawful trespass by Solid

25   Ground's property manager, Mercy Housing Northwest.  Attorneys Puckett & Redford might

26   appropriately be barred from this case, and this action dismissed, pending disciplinary action

27

28   DEMURRER TO ENTIRE COMPLAINT DATE: JULY 24, 2018TIME: 9:00 AMPLACE: ROOM W325 OF THE
KING COUNTY COURTHOUSE, 516 THIRD AVENUE, SEATTLE, WASHINGTON - 4

1   by the Washington Office of Disciplinary Counsel, and investigation by the Post Office

2   Inspector General.

3

4

5   Wherefore, defendant requests that:

6   1.   Defendant's demurrer be sustained without leave to amend;

7   2.   The Court enter an order dismissing the plaintiff's action with prejudice; and

8   3.   The Court grant such other and further relief that the court considers proper, including

9        incidental court-related costs and attorney's fees for defendant's advisors.

10  4.   The Court waive any and all court fees for the defendant, who is indigent.

11

12  Dated: July 23, 2018.

13

14  Defendant pro se

15

16

17

18

19

20

21

22

23

24

25

26

27

28  DEMURRER TO ENTIRE COMPLAINT DATE: JULY 24, 2018TIME: 9:00 AMPLACE: ROOM W325 OF THE
    KING COUNTY COURTHOUSE, 516 THIRD AVENUE, SEATTLE, WASHINGTON - 5

1   Kevin Volkmann (pro se)
    4244 University Way NE, #45123
2   Seattle, WA 98105
    646-389-3323
3

4
                    IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
5
                            IN AND FOR THE COUNTY OF KING
6

7
    SOLID GROUND WASHINGTON,                    Case No.: 18-2-16260-2SEA
8
                  Plaintiff,
9
    vs.                                         Order Dismissing Complaint
10
    KEVIN VOLKMANN,                             Date: July 24, 2018
11                                              Time: 9:00 AM
                  Defendant                     Place: Room W325 OF THE KING COUNTY
12                                              COURTHOUSE, 516 THIRD AVENUE, SEATTLE,
                                                WASHINGTON
13

14              ORDER

15
          The Court sustains the defendant's demurrer ____ with ____ without leave to amend.
16

17
          The Court hereby dismisses the above-captioned case ___ with prejudice ___without prejudice.
18

19
          The Court specifies that the plaintiff reimburse defendant an amount of $_____ for incidental
20
    court costs and for $_____ to be paid to defendant's legal counsel.
21

22
          The Court waives any and all court fees for the defendant, who is indigent.
23

24
          Dated: July 24, 2018.
25

26
          _____
27          Commissioner Henry Judson III

28
    ORDER DISMISSING COMPLAINT DATE: JULY 24, 2018TIME: 9:00 AMPLACE: ROOM W325 OF THE
    KING COUNTY COURTHOUSE, 516 THIRD AVENUE, SEATTLE, WASHINGTON - 1